UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

**MICHAEL CORDARO**            United States CASE

        Petitioner            #19-CV-6601 MAT

v.


**DEPARTMENT OF DEFENSE**

        Respondent            DATE: June 20, 2020


**APPELLANT'S MOTION FOR COURT INTERVENTION – EXAMPLES OF AGENCY PERJURY, LIES IN COURT, ATTEMPTS TO CONCEAL TRANSFER REQUESTS**


**INTRODUCTION:**

    The following detail is being presented to the judge as support to validate that both the agency branch manager and agency supervisor were well aware of the fact that the complainant requested a transfer in October 2017 but both lied because it was in the best interest of the agency to conceal the fact that the request was ever initiated. The following details from various testimonies and hearings are being shown in order to support the fact that the agency illegally misrepresented circumstances to both an MSPB judge and a federal investigator. The agencies motive in misrepresenting the circumstances within was to conceal the fact that the complainant made agency management aware of the fact that he felt select employees (female) had been receiving preferential treatment and that he was subject to a hostile work environment and harassment.

1

- Ms. Jessie Essom (Mr. Cordaro's first level NCBO manager or supervisor) will be referred to as Ms. Essom.
- Ms. Michele Sholar (Mr. Cordaro's second level NCBO manager or branch manager) will be referred to as Ms. Sholar.
- Ms. Debra Neville (Mr. Cordaro's third level NCBO manager or regional) will be referred to as Ms. Neville.
- Ms. Joanne Ruggerio (MSPB Judge in the case) will be referred to as AJ Ruggerio.
- Ms. Temple Wilson (Agency Assistant Counsel Representative) will be referred to as Ms. Wilson.
- Ms. Jenny Lindenbaum (Agency Security) will be referred to as Ms. Lindenbaum
- Ms. Agatha Edkin – Complainant's former NCBO first level manager and also his supervisor the year of his dismissal.

Table of Contents

INTRODUCTION ...................................................................................................2
BACKGROUND: WHY THE PLAINTIFF REQUESTED A TRANSFER......................4
WRITTEN VERIFICATION AGENCY LIES AND MISREPRESENTATIONS................5
   1) Ms. Sholar Acknowledged Complainant's Request for a Transfer in October 2017........5
   2) 2) Written Verification that Ms. Sholar made Ms. Essom aware of the Appellant's Request for a Transfer in October 2017.....................................................................6
   3) 3) Written Verification that Ms. Sholar lied to the MSPB judge during the March 4, 2019 hearing, by indicating that he did not request a transfer.........................................7
   4) 4) Written Verification that Ms. Essom lied to the MSPB judge during the March 4, 2019 hearing, by indicating that he did not request a transfer.......................................10
CONCLUSION......................................................................................................13

## BACKGROUND: WHY THE PLAINTIFF REQUESTED A TRANSFER

The plaintiff was transfer from the office team of Ms. Edkin to the work team of Ms. Essom in October 2017. Ms. Essom harshly criticized the plaintiff in an open meeting involving both Ms. Edkin and the plaintiff some time shortly thereafter in October 2017. Ms. Essom criticized the plaintiff for respectfully documenting a disagreement with Ms. Edkin in regards to how to address select audit work paper steps. The plaintiff explained to Ms. Essom that one of his prior supervisor's, Mr. Alan Lathrop, had requested that he document disagreements as part of the audit notes. Mr. Lathrop requested that the plaintiff provide written responses to supervisory guidance either concurring or taken exception to suggested audit approaches. Ms. Essom indicated to the plaintiff that he was to "discuss with her first" if in fact he was to take exception to her supervisory guidance and treated him as if his actions were insubordinate.

Ms. Essom went on to harshly criticize his knowledge of auditing and discouraged open communication between the two from that day forward. Ms. Essom indicated that she believe that he was unqualified to perform his job literally within days of joining her work team before she had assigned him a work task. There was no reason for Ms. Essom to be so critical of the complainant at this point in time, as Ms. Essom was likely handling circumstances in the manor that she handled them because she held some form of bias against the complainant. Knowing that Ms. Essom had a history of being difficult, the complainant requested a transfer accordingly. This confrontation with Ms. Essom is what forced the complainant to request a transfer away from Ms. Essom's team.

Approximately two weeks later near the end of October 2017, the complainant had a private sit down with Ms. Sholar to request a transfer. He cited a hostile work environment and harassment as the reasons that he was interested in a transfer. He also indicated that he did not think it was fair that he was moved to her work team in the first place, indicating that two female auditors received better preference in their choice to be moved to the work team that he was also interested in joining under a supervisor that he considered to be more open-minded.

3

## WRITTEN VERIFICATION AGENCY LIES AND MISREPRESENTATIONS

### 1) Ms. Sholar Acknowledged Complainant's Request for a Transfer in October 2017.

Mr. Cordaro's claim that he requested a private sit down with Ms. Sholar to request a transfer away from the hostile work environment under Ms. Essom can be validated in writing. Ms. Sholar acknowledged to the DCAA EEO Branch Chief Ms. Kelly K. Thomas as part of her investigation under DCAA-CASE-FD18-007 that the appellant did in fact request a transfer in October 2017. Written confirmation from Ms. Thomas from her investigation is shown below:

*Shown below is the excerpt from the EEO Case DCAA-CASE-FD18-007 made available to the appellant.*

***"In October 2017, Branch Manager Michele Sholar did not approve his request to be reassigned away from the supervision of Jessie Essom".***

***Ms. Sholar confirms*** *she denied the request of a male auditor to be reassigned away from the supervision of Ms. Essom.*

> Anonymous
> DCAA-CASE-FD18-007
> Page No: 7
>
> Claim b:  In October 2017, Branch Manager Michele Sholar did not approve his request to be reassigned away from the supervision of Jessie Essom.
>
> Ms. Essom states she is aware the male auditor requested reassignment from her supervision.
>
> Ms. Sholar confirms she denied the request of a male auditor to be reassigned away from the supervision of Ms. Essom.

**2) Written Verification that Ms. Sholar made Ms. Essom aware of the Appellant's Request for a Transfer in October 2017.**

It can be validated that Ms. Sholar elected to tell Ms. Essom what the appellant communicated to her in secrecy regarding his request for a transfer. This is also additional verification that Ms. Sholar chose to escalating circumstances between the complainant and his supervisor rather address the issue of harassment and work to relocate the appellant from the team.

*Shown below is the excerpt from the EEO Case DCAA-CASE-FD18-007, page 708-710 in the ROI made available to the appellant:*

*Ms. Essom: "At the beginning of the FY in October/November, Mike had a sit down with my manager, Michele Sholar. He requested to be moved off my team".*

**3) Written Verification that Ms. Sholar lied to the MSPB judge during the March 4, 2019 hearing, by indicating that he did not request a transfer.**

Ms. Sholar had previously confirmed to the agency investigator that she was aware that Mr. Cordaro requested a transfer in October 2017. When questioned during the March 4, 2019 MSPB hearing, she acknowledged that the complainant did in fact request to meet with her in privacy; however, she misrepresented circumstances regarding the nature of the meeting. Ms. Sholar told the judge that the complainant requested a meeting after the conclusion of his work day to discuss a very serious concern and she did not know what he wanted because she "couldn't read his mind". Given the fact that Ms. Sholar acknowledged to the agency investigator that she was aware that the complainant requested a transfer and also told Ms. Essom that he had requested a transfer, there is two solid pieces of evidence available that would confirm that Ms. Essom lied under oath to the MSPB judge. Testimony from the hearing regarding the meeting is shown below:

*Ms. Wilson: "All right. Thank you. Let me see here. I want to direct you, well let me, when was the first time that you met Mr. Cordaro anywhere with him as an employee at DCAA?*

*Ms. Scholar: "Probably my first visit to the office, NCBO, I believe it was October of 2017."*

*Ms. Wilson: "Okay. Do you recall sitting down and meeting with Mr. Cordaro about anything in particular?"*

*Ms. Scholar: "Yes. I do remember meeting with him."*

*Ms. Wilson: "And do you remember what happened in that meeting? Was he, do you recognize him?"*

*Ms. Sholar: "That was a long time ago, so I do recall talking with Mr. Cordaro, and he assured me that he was going to do his best, to be the best auditor that he could be and that he was going to do everything he could to make the (UI) happen"*

*Ms. Wilson: "And why would he say that, do you think? I mean I guess you don't know his mind".*

*Ms. Sholar: "I don't. I don't know. I think that he was, I don't want to say nervous, but he seemed nervous. He said he might be concerned, but there was no reason to be concerned because he'd never been under Jessi's supervision before."*

*Ms. Wilson: "He might be concerned? Did he say why he might be concerned?"*

6

Ms. Scholar: "He was concerned that, I don't know. I couldn't read his mind, so—"

Ms. Wilson: "Okay"



> MS. SCHOLAR: He was concerned that, I don't know. I couldn't read his mind, so —
>
> MS. WILSON: Okay.

Branch manager Sholar is misrepresenting circumstances by concealing that the complainant requested a transfer. She is also concealing details with regard to why the complainant requested a transfer, merely indicating that "he seemed nervous".

Ms. Sholar was negligent in working to make reasonable accommodations to assist the appellant in performing his job duties and removing him from a hostile work environment. Ms. Sholar's decision not to move the complainant also supports his notion that there was a great deal of favoritism with regard to which auditors (largely female) was given the opportunity to move to their preferred work teams. The agency recognized that Ms. Sholar was negligent in addressing workplace harassment; this is evident in the fact that Ms. Sholar lied under oath by fabricating when the appellant told her that he was interested in being transfer away from the supervision of Ms. Essom. Ms. Sholar's testimony should be treated as perjury.

Ms. Sholar also lied to a federal investigator by indicating that "Mr. Cordaro did not request to change teams in October 2017". This can be validated through her express written response documented within the ROI:

1. **During October 2017, his request for transfer to another team was denied by Ms. Michelle Sholar, Branch Manager;**

Q. Provide a response to this allegation.

A. As far as I am aware, Mr. Cordaro did not request to change teams in October 2017. He was placed on SA Essom's team as part of a team reorganization. As far as I know, he did not put in a request to change teams at that point. This was the first time that I supervised Mr. Cordaro in his career. Only after the PIP was on the horizon did he request to be moved to Mr. Alan Lathrop's team. At this time, I was made aware that he was requesting to be moved to Mr. Lathrop's team.

8

**4) Written Verification that Ms. Essom lied to the MSPB judge during the March 4, 2019 hearing, by indicating that he did not request a transfer.**

Ms. Essom had previously confirmed to the agency investigator that she was aware that Mr. Cordaro requested a transfer in October 2017. She also write to agency security confirming that she was aware that a transfer was requested and that Ms. Sholar told her. When questioned during the March 4, 2019 MSPB hearing, she lied by indicating she was unaware. Testimony from the hearing regarding the transfer request is shown below:

*Mr. Cordaro: "Were you, were you aware, were you aware that I had talked to Michele at that point in time (October 2017)?"*

*Ms. Essom: "I don't know when you talked to her. I didn't. You asked where the (UI) she doesn't know what time, when you asked, I'm not aware of that. Michele doesn't (UI)."*

*Mr. Cordaro: "Well do you want to see? Well I'm aware that I had asked?"*

*Ms. Essom: "I don't know what time it was."*

*Mr. Cordaro: "Okay."*

*Ms. Essom: "But I do know at some point in time after you had been on this team for a while, I wasn't aware that you asked in advance."*



MR. CORDARO: Okay. Were you aware, Jessi, that in October of 2017, with, which incidentally was the same week that we moved from the remote office to our present office, Michele Sholar had come up that week, just one week and clearly one week (UI)?

MS. ESSOM: Okay.

MR. CORDARO: I had her, I had her started. I would sit down with Michele and I said, wait for Michele. I went over to see something. I see signs that the (UI) doesn't get along with me. Doesn't like me. Where from Michele? I even was in base at the office move, before I even had access to some of these mobile firm files, other responsibilities. I once asked you, where is [UI] for how I needed your support. [UI] told me that's nothing you get (UI) the [UI].

US 4025

9



Ms. Essom also lied to the federal investigator by indicating that she was made aware of the transfer request from Ms. Sholar only after she had dropped his performance standards to "Unacceptable". This would have been around April 2018 or later, or at least 6 months after October 2017. Ms. Essom's response from the ROI is shown below and should be treated as a misrepresentation of circumstances:

The supervisor, Ms. Jessie Essom, indicated something different during a DCAA EEO investigation. She indicated that she was aware of the transfer request in 2017. Her comment is shown:



Q. When did Complainant request a transfer, why did he request a transfer, and to whom did he make his transfer request to?

A. I am unaware of the specifics, as the request would have been made to Branch Manager Ms. Michele Sholar. However, the request was made after Mr. Cordaro was made aware that he was not meeting the performance standards. He requested a transfer to Mr. Alan Lathrop's team. His request would have been made to Branch Manager Michele Sholar. I do not have the authority to make team changes.

This is again proved false. Ms. Essom was proven to be aware of the request. She indicated to the DCAA EEO contact that she was aware in 2017. She was likely told by the branch manager, Ms. Michele Sholar.

**CONCLUSION:**

The complainant requested a transfer away from Ms. Essom as an amicable resolution. The agency misrepresented circumstances in order to conceal the fact that they were negligent in addressing the complainant's requests. The fact that the agency worked diligently to conceal the extent of their wrongdoing helps support the notion that the complainant's was subsequently reprised against after he reported agency abuse as it pertains to a protected activity.

There is written verifiable evidence that the agency attempted to conceal the fact that the complainant requested a transfer away from a very hostile work situation in October 2017. Firstly, there is written verifiable evidence that the complainant requested Ms. Sholar grant him a transfer away from the supervision of Ms. Essom while he was still in good standing with the organization. Secondly, there is verifiable evidence available that would confirm the fact that the agency attempted to conceal the fact that they were aware that a transfer exist. Facts related to the complainant's transfer were fraudulently concealed by Ms. Essom and Ms. Sholar in later responses, including during their March 4, 2019 MSPB hearing testimony where they both indicated under oath that they were not aware of the complainant's request. Testimony of Ms. Sholar and Ms. Essom should be treated as perjury and should be punishable through court sanctions accordingly.



United States District Court<br>
Western District of New York<br>
Rochester, New York 14614

Michael Cordaro<br>
35 Chateau Lane<br>
Rochester, NY 14626

June 22, 2020

Mark W. Pedersen<br>
United States Magistrate Judge

Written Proof that the Document Titled "Appellant's Motion for Court Intervention – Examples of Agency Perjury, Lies in Court, Attempts to Conceal Transfer Requests was serviced to the Opposing Counsel on June 22, 2020:

Dear Judge Pederson,

I am providing you with proof that a copy was serviced to opposing counsel, Ms. Kathryn Smith. This notice will also be also be mailed to Ms. Smith at her business address:

Kathryn L. Smith, AUSA<br>
U.S. Attorney's Office<br>
100 State Street<br>
Rochester, NY 14614

I politely request that you docket the motion and issue a decision.

Very truly yours,

*[signature]*

Michael Cordaro, Plaintiff<br>
*Cordaro v. Department of Defense, No. 19-CV-6601-EAW-MJP*

Enclosure:<br>
Cc: Kathryn L. Smith, AUSA

1