UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL CORDARO,

                Plaintiff,

     v.

DEPARTMENT OF DEFENSE,

             Defendant.

_____

**DECISION AND ORDER**

6:19-CV-06601 EAW

## INTRODUCTION

*Pro se* plaintiff Michael Cordaro ("Plaintiff") commenced the instant action on July 1, 2019, by docketing a petition for review of a decision of the Merit Systems Protection Board ("MSPB") with the United States Court of Appeals for the Federal Circuit. (Dkt. 1 at 2). The MSPB had entered a decision on May 21, 2019, rejecting Plaintiff's appeal of defendant the Department of Defense's ("DOD" or "Defendant") decision to remove him from his position as "Auditor, GS-12, Field Detachment, North Central Branch Office, Rochester, New York." (*Id*. at 32).

On August 16, 2019, the Federal Circuit issued an order concluding that this was a "mixed case" in which Plaintiff was both challenging the MSPB's decision and asserting an affirmative claim of discrimination and that it accordingly lacked jurisdiction. (*Id*. at 254-55). In particular, the Federal Circuit noted that Plaintiff had raised the affirmative defense of gender discrimination before the MSPB. (*Id*. at 254). The Federal Circuit ordered that the action be transferred to this District, because "review of a . . . mixed case must be sought in federal district court." (*Id*. at 255).

Currently pending before the Court is a motion for summary judgment filed by Defendant. (Dkt. 47).  Plaintiff has opposed Defendant's motion (Dkt. 59) and has filed his own motions to compel, for court intervention, and for sanctions (Dkt. 62; Dkt. 64; Dkt. 67).  For the reasons discussed below, the Court grants Defendant's motion for summary judgment and denies Plaintiff's various motions.

## BACKGROUND

### I.   Factual Background

Before setting forth the factual background of this matter, the Court must resolve a threshold procedural issue.  As required by Local Rule of Civil Procedure 56(a)(1), Defendant submitted with its motion for summary judgment "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  L. R. Civ. P. 56(a)(1).  Pursuant to Local Rule 56(a)(2), Plaintiff was required to include with his opposition papers "a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."  L. R. Civ. P. 56(a)(2).  He did not do so.  Instead, he included his own "Statement of Undisputed Facts and Issues" (Dkt. 59 at 3-21) ("Plaintiff's Statement"), which sets forth his version of the relevant events but fails to directly respond to Defendants' Local Rule 56(a)(1) Statement of Material Facts Not In Dispute (Dkt. 47-3) ("Defendant's Statement").

Local Rule 56(a)(2) further provides that "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." L. R. Civ. P. 56(a)(2) (emphasis added). Although a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001), a district court has discretion to deem facts admitted for lack of compliance with its local rules, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (it was within district court's discretion to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations" contrary to the district's local rules); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (because plaintiff failed to respond to defendant's statement of material facts submitted in accordance with local rules, "the material facts contained in his statement are deemed to be admitted as a matter of law"). Here, the Court has accepted as true the facts set forth in Defendant's Statement to the extent they are (1) supported by the evidence of record and (2) not directly controverted by Plaintiff's Statement and the exhibits submitted in support thereof. Where a fact is disputed, the Court has noted the same.

Plaintiff is male and was born in July of 1984. (Dkt. 47-3 at ¶ 1). He is a Certified Public Accountant ("CPA") who obtained his bachelor's degree in 2006 from St. John Fisher College and his master's degree in 2007 from the Rochester Institute of Technology. (*Id*. at ¶¶ 1-2).

Following his graduation from the Rochester Institute of Technology, Plaintiff was employed by the Internal Revenue Service as a Grade GS-9 Accountant in Washington, D.C.  (*Id*. at ¶ 3).  In August of 2011, Plaintiff took a position as a GS-0511 Auditor, Grade GS-9, Step 9, in the Rochester Office of the Defense Contract Audit Agency ("DCAA") North Central Branch Office ("NCBO").  (*Id*. at ¶ 4).  DCAA is an agency of DOD that performs contract audit functions.  (*Id*. at ¶ 9).  DCAA maintains five regional offices and over 300 field audit offices.  (*Id*. at ¶ 11).  The NCBO is comprised of offices in three locations: Rochester, New York; Clifton, New Jersey; and Melbourne, Florida.  (*Id*. at ¶ 12).

In November of 2015, Plaintiff received an annual performance appraisal rating his overall performance as "Unacceptable."  (*Id*. at ¶ 31).  The DCAA performance appraisal system in place at that time employed a five-tiered rating system, with ratings of "Outstanding," "Exceeds Fully Successful," "Fully Successful," "Minimally Successful," and "Unacceptable."  (*Id*. at ¶¶ 25-26).  Plaintiff's rating supervisor in November of 2015 was Supervisory Auditor Alan Lathrop ("Lathrop") and the reviewing supervisor was Branch Manager Michael LaLoggia ("LaLoggia").  (*Id*. at ¶ 32).  In his written appraisal, Lathrop noted numerous deficiencies in Plaintiff's performance, including that he "included inaccurate information in his audits," "misunderstood the purpose of certain required audit steps," and "turned in incomplete work."  (*Id*. at ¶ 34).

On January 19, 2016, Lathrop placed Plaintiff on a performance improvement plan ("PIP"), which lasted until May 9, 2016.  (*Id*. at ¶ 39).  Plaintiff successfully completed this PIP by raising his performance to "Minimally Successful."  (*Id*. at ¶ 40).  Plaintiff was

warned in writing it was anticipated that he would continue to improve to the "Fully Successful" level.  (*Id*. at ¶ 41).

In his next performance appraisal on May 5, 2017, Plaintiff was rated "Minimally Successful."  (*Id*. at ¶ 43).  At that time, Plaintiff's direct supervisor was Edward Rusinko ("Rusinko") and the reviewing supervisor was Branch Manager Amanda Cappas.  (*Id*. at ¶ 44).  In his written appraisal, Rusinko indicated that Plaintiff "consistently failed to include appropriate working papers, failed to demonstrate an understanding of the nature, types, and steps of various audits, provided unclear and inconsistent working papers and failed to make corrections even after having them pointed out to him."  (*Id*. at ¶ 46).

On or about September 13, 2017, Plaintiff's supervisor Agatha Edkin ("Edkin") notified Plaintiff in a written progress report that for the three-month period from May 2017 to August 2017, his performance had been deficient in three "Critical Elements" of his performance plan: "Audit Planning and Approach"; "Audit Performance"; and "Documenting and Reporting Results."  (*Id*. at ¶ 49).  Edkin advised Plaintiff that he was failing to meet the core requirements of his position.  (*Id*. at ¶ 51).

In October of 2017, Michele Sholar ("Sholar") became branch manager of the NCBO.  (*Id*. at ¶ 53).  At the time, the NCBO Rochester Office employed 13 Grade GS-12 Senior Auditors, including Plaintiff.  (*Id*. at ¶ 13).  The Grade GS-12 Senior Auditors were divided into three teams, each of which was supervised by one of three Grade GS-13 Auditor Supervisors: Jessi Essom ("Essom"), Edkin, and Joel Verstraete.  (*Id*.).  When she became Branch Manager, Sholar reorganized the teams and placed Plaintiff on the audit team supervised by Essom.  (*Id*. at ¶¶ 7, 23, 53).

Shortly after Plaintiff was placed under Essom's supervision, she criticized him and raised the issue of a PIP.  (*Id*. at ¶ 57).  Plaintiff claims that he requested a transfer from Essom's team in October 2017, only two weeks after being assigned to her supervision.  (*See* Dkt. 59 at 7).  Sholar visited the NCBO Rochester Office in November 2017, at which time Plaintiff expressed his concern that Essom was going to fire him.  (Dkt. 47-3 at ¶ 58).

In December of 2017, Essom arrived at work to find "a small pile of short dark har stubbles" on her desk next to her keyboard.  (*Id*. at ¶ 95).  "A few months later," she found a similar pile of hair on her desk, which she believed had been placed intentionally.  (*Id*.).  After the second incident, Essom contacted Sholar.  (*Id*. at ¶ 96).  Sholar individually met with staff to discuss the incident.  (*Id*.).

On or about January 18, 2018, Essom provided Plaintiff with "Performance Notes" related to a specific audit on which he had been working.  (*Id*. at ¶ 68).  Essom advised Plaintiff that "he had failed to develop well-reasoned audit conclusions, document his work, exercise skill and judgment, and submit a report that was well written requiring minimal supervisory revisions."  (*Id*. at ¶ 69).  She further admonished Plaintiff for spending 67 hours on an audit for which only 20 hours had been budgeted.  (*Id*. at ¶ 70).

In February of 2018, Essom provided Plaintiff with a "Mid-Year Progress Review" in which she rated his performance as "Unacceptable" and detailed deficiencies in three of five "Critical Elements" in his performance plan.  (*Id*. at ¶ 71).  At this time, DCAA had implemented a new "Performance Management and Appraisal Program" using only a three-tiered rating system, with the only available ratings being "Outstanding," "Fully Successful," and "Unacceptable."  (*Id*. at ¶¶ 25, 29).

In March of 2018, Plaintiff reported an incident in which a blue substance—which he describes as a "slime"—was placed on the handle of his desk drawer.  (*Id*. at ¶ 97).  Two or three days after this incident, Essom found another pile of hair on her desk.  (*Id*. at ¶ 98).

Essom placed Plaintiff on a PIP by notice dated April 3, 2018 (the "2018 PIP Notice").  (*Id*. at ¶ 72).   The 2018 PIP Notice advised Plaintiff that he had 90 days to demonstrate "Fully Successful" performance and that during the pendency of the PIP, he would have weekly meetings with Essom to review his assignments and evaluate his progress.  (*Id*. at ¶¶ 83-84).  The 2018 PIP Notice warned Plaintiff that if he "did not meet the Fully Successful standard in each deficient Critical Element by the end of the 90-day PIP period, it would be necessary to initiate a proposal to remove him from his position." (*Id*. at ¶ 87).

On April 18, 2020, Essom contacted DCAA human resources to report concerns about Plaintiff.  (*Id*. at ¶ 99).  Essom stated that she had had a conversation with Plaintiff in which he stated that his life was "unraveling" and that he felt like he was "driving a car and [Essom had] a gun to his head."  (*Id*.).  Essom stated that she was concerned that Plaintiff was becoming unstable.  (*Id*.).

The PIP period was ultimately extended by eight days and ended on July 9, 2018. (*Id*. at ¶ 88).  During the PIP period, Plaintiff was assigned two audits.  (*Id*. at ¶ 89).  He did not complete either audit assignment and one of the audits was so far past its due date that it had to be cancelled.  (*Id*. at ¶ 92).

At the conclusion of the PIP period, Essom determined that Plaintiff had failed to improve his performance to the "Fully Successful" level.  (*Id*. at ¶ 93).  Essom and Edkin met with Plaintiff to advise him of this outcome.  (*Id*.).

On July 19, 2018, Essom emailed DCAA security regarding Plaintiff.  (*Id*. at ¶ 101). Essom's email indicated that she felt that Plaintiff had an inappropriate knowledge of and interest in her personal life, and implied that she believed he was responsible for leaving the piles of hair on her desk.  (Dkt. 47-5 at 8-10).  Essom described Plaintiff's behavior as "borderline stalking."  (*Id*. at 10).

Sholar issued Plaintiff a Proposed Notice of Removal for Unacceptable Performance (the "Proposed Notice of Removal") on July 26, 2018.  (Dkt. 47-3 at ¶ 102). On August 1, 2018, Plaintiff sent NCBO Regional Manager Deborah Neville ("Neville") a document entitled "Notice of Formal Written Grievances Against Ms. Jessi Essom, Supervisory Auditor and Ms. Michele Sholar, Branch Manager" (the "Written Grievance") (*Id*. at ¶ 107).  In his Written Grievance, Plaintiff claimed that he had been subjected to prejudice and harassment by Essom and Sholar throughout the fiscal year, that the 2018 PIP allowed for no possible chance of success, and that the "current management team (female majority)" favored female auditors.  (*Id*. at ¶ 109).

Neville reviewed both the Proposed Notice of Removal and Plaintiff's Written Grievance, and independently determined that Plaintiff's performance was unacceptable, and that removal was warranted.  (*Id*. at ¶ 110).  Neville further independently reviewed Plaintiff's working papers prepared during the PIP period in 2018 prior to making her

determination. (*Id*. at ¶ 112). Neville issued a Notice of Decision to Remove for Unacceptable Performance to Plaintiff on September 4, 2018. (*Id*. at ¶ 111).

## II.    **Procedural Background**

On September 18, 2017, Plaintiff appealed Defendant's decision to remove him from his employment to the MSPB. (Dkt. 47-3 at ¶ 151). In his appeal, Plaintiff alleged that (1) the DCAA had applied the incorrect standards in assessing his performance and (2) he was illegally discriminated against based on his gender. (*Id*. at ¶ 152).

Administrative Law Judge ("ALJ") JoAnn M. Ruggiero held a hearing on Plaintiff's appeal on March 4, 2019, after the conclusion of discovery and pre-hearing proceedings. (*Id*. at ¶ 153). On May 21, 2019, ALJ Ruggiero issued a decision affirming Plaintiff's removal. (*Id*. at 154).

As previously explained, Plaintiff then commenced the instant action on July 1, 2019, by docketing a petition for review with the Federal Circuit. The Federal Circuit then transferred the matter to this Court on August 16, 2019. (Dkt. 13).

Discovery in this case closed on November 30, 2020. (Dkt. 33).[1] Defendant filed its motion for summary judgment on February 15, 2021. (Dkt. 47). Plaintiff filed his response on March 16, 2021. (Dkt. 59).

Plaintiff filed a motion to compel on March 24, 2021. (Dkt. 62). Defendant responded to this motion on April 5, 2021. (Dkt. 63). Then, on April 13, 2021, Plaintiff

---

[1]    Plaintiff filed a motion for extension of this deadline on November 30, 2020. (Dkt. 44). That motion was denied by Magistrate Judge Mark W. Pedersen, to whom all pre-trial, non-dispositive matters had been referred. (Dkt. 58; Dkt. 61).

filed a "motion to compel addendum and motion for court intervention."  (Dkt. 64).

Defendant filed its reply in further support of its motion for summary judgment on April

16, 2021.  (Dkt. 65).  Plaintiff filed a further brief in support of his motions to compel and

for court intervention on April 28, 2021.  (Dkt. 66).

Plaintiff filed a motion for sanctions on May 5, 2021.  (Dkt. 67).  Defendant filed a

response to the sanctions motion on June 9, 2021 (Dkt. 68), and Plaintiff filed a reply on

June 16, 2021 (Dkt. 69).

## DISCUSSION

### I.    Standard of Review on Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

should be granted if the moving party establishes "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  The Court should grant summary judgment if, after considering the evidence in

the light most favorable to the nonmoving party, the Court finds that no rational jury could

find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as

to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486

(2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the

party moving for summary judgment may meet its burden by showing the evidentiary

materials of record, if reduced to admissible evidence, would be insufficient to carry the

non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103

(W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.    Standard of Review in Mixed Cases

As noted above, this is a so-called "mixed case" in which Plaintiff is both challenging the MSPB's decision and asserting an affirmative claim of discrimination. The Court applies a bifurcated standard of review in such cases. As to Plaintiff's non-discrimination-based challenge to the MSPB's decision, he is "only entitled to judicial review of the administrative record," and the MSPB's decision must be affirmed unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." *Daigle v. Principi*, No. 5:00-CV-189 FJS DEP, 2005 WL 8165629, at *2 (N.D.N.Y. Mar. 2, 2005) (quoting 5 U.S.C. § 7703(c)). However, the Court reviews the discrimination claim *de novo*, applying the

standard under the relevant anti-discrimination statute.  *Murray v. U.S. Dep't of Just.*, 821 F. Supp. 94, 101 (E.D.N.Y. 1993), *aff'd,* 14 F.3d 591 (2d Cir. 1993).

## III.   <u>Plaintiff's Motions</u>

Before considering the merits of Defendant's motion for summary judgment, the Court resolves Plaintiff's various motions.  (Dkt. 62; Dkt. 64; Dkt. 67)  Plaintiff has filed the following: (1) a motion to compel in which he contends, pursuant to Federal Rule of Civil Procedure 56(d), that additional discovery is necessary in order for him to oppose Defendant's motion for summary judgment; (2) a "motion to compel addendum and motion for court intervention" in which he provides additional information regarding his request for discovery and requests that "the issues of hostile work place, workplace harassment, and illegal reprisal for discriminatory reasons also be into this case [sic]" (Dkt. 64 at 3); and (3) a motion for sanctions in which he asks the Court to determine that Defendant has presented false evidence in an attempt to "unjustifiably influenc[e] the court" (Dkt. 67 at 3).

### A.   <u>Motion to Compel</u>

Turning first to Plaintiff's motion to compel, lack of discovery cannot, in and of itself, justify denial of a properly supported motion for summary judgment.  Although Rule 56(d) permits a party to oppose a motion for summary judgment on the ground that he needs discovery, any such opposition must demonstrate "by affidavit or declaration that, for specified reasons, [the party] . . . cannot present facts essential to justify its opposition." *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 5 F. Supp. 3d 410, 420 (W.D.N.Y. 2014), *aff'd*, 621 F. App'x 70 (2015).  "The affidavit must

explain: '[(1)] the nature of the uncompleted discovery; [(2)] how the facts sought are reasonably expected to create a genuine issue of material fact; [(3)] what efforts the affiant has made to obtain those facts; and [(4)] why those efforts were unsuccessful.'" *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 921 F. Supp. 2d 111, 127 (S.D.N.Y. 2013) (quoting *Hoffmann v. Airquip Heating & Air Conditioning*, 480 F. App'x 110, 112 (2d Cir. 2012)).

Here, while Plaintiff has submitted an affidavit as required by Rule 56(d) (*see* Dkt. 62), he has failed to demonstrate therein that there is uncompleted discovery in this case that could reasonably be expected to create a genuine issue of material fact. As to Plaintiff's requests for examples of his actual work product, documents "validat[ing] the existence of a CMTL for progress payment type audit assignments in 2018" (Dkt. 62 at 5)," training materials available to Plaintiff during the PIP period, and email exchanges between Plaintiff and certain of his former supervisors,  Defendant has demonstrated in opposition to Plaintiff's motion to compel that these documents either do not exist or have already been produced.  (*See* Dkt. 63).

Plaintiff's remaining requests seek information that is irrelevant to the resolution of the pending motion for summary judgment.  In particular, Plaintiff seeks information related to a former co-worker who, as discussed more fully below, is not a valid comparator for purposes of his discrimination claim.  Plaintiff further seeks information regarding hiring and firing practices at DCAA generally, as well as additional information regarding his former co-workers' subjective opinions regarding his work product and relationship with Essom, but he has failed to adequately explain how such evidence would support the

particular legal claims he has made in this case.  Instead, Plaintiff has focused on the merits of the MSPB's determinations regarding his work product.  However, as noted above, the Court's review of that aspect of the MSPB's determination is limited to the administrative record.  The additional information sought by Plaintiff simply cannot reasonably be expected to change the outcome of the instant motion for summary judgment.

Voluminous discovery has occurred in this case, and the discovery deadline has expired.  Plaintiff has failed to demonstrate that a reopening of discovery is warranted pursuant to Rule 56(d), and so the Court denies his motion to compel.

### B.    Motion for Court Intervention

The Court turns next to Plaintiff's "motion to compel addendum and motion for court intervention."  Plaintiff does not seek any additional relief related to his motion to compel, which the Court has already denied for the reasons set forth above.

As to Plaintiff's request that "the issues of hostile work place, workplace harassment, and illegal reprisal for discriminatory reasons also be into this case [sic]" (Dkt. 64 at 3), the Court has already issued a Decision and Order denying Plaintiff's prior request to amend his pleadings to assert such claims (Dkt. 5).  Plaintiff has presented no new information to call into question the Court's prior determination in this regard, and so Plaintiff's motion is denied.

### C.    Motion for Sanctions

Finally, the Court considers Plaintiff's motion for sanctions.  This motion is somewhat difficult to parse.  As an initial matter, the Court notes that the motion is addressed to the "Administrative Judge" and that Plaintiff purports to bring his motion

pursuant to 29 C.F.R. § 1614.109(f)(3), which sets forth procedures for hearings before the Equal Employment Opportunity Commission.   (*See* Dkt. 67 at 1).   This regulation simply does not apply in this federal court proceeding.   Nonetheless, in light of Plaintiff's *pro se* status, the Court has reviewed his filing to see if there is any basis on which to sanction Defendant pursuant to Federal Rule of Civil Procedure 11 or under any other theory.

The essence of Plaintiff's sanctions motion appears to be that the factual information presented by Defendant about his conduct as an employee is false and misleading. However, at most Plaintiff has established that there is a factual dispute as to how he interacted with Essom and others during the course of his employment.   "With respect to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support."   *StreetEasy, Inc. v. Chertok*,   752 F.3d 298, 307 (2d Cir. 2014).   It is not the role of this Court on a motion for sanctions to weigh the credibility of Plaintiff's and Essom's respective version of events.   Sanctions are not warranted on the instant record.   The Court accordingly denies Plaintiff's motion.

## IV.   <u>Plaintiff's Discrimination Claim</u>

The Court turns now to the merits of Defendant's motion for summary judgment, beginning with Plaintiff's claim that he was discriminated against on the basis of his gender.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") prohibits employers from discriminating on the basis of gender.   On a motion for summary judgment, discrimination claims under Title VII are evaluated under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Plaintiff must initially establish a *prima facie* case of discrimination by establishing that: (1) he was within a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 253 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate "some legitimate nondiscriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802.  If the employer articulates a sufficient reason, the burden shifts back to the plaintiff to prove that the employer's reason "was in fact pretext" for discrimination.  *Id*. at 804; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  Plaintiff is "not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that a prohibited factor was at least one of the 'motivating' factors for the decision." *Smith v. New York and Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020) (internal quotations and citation omitted).

For purposes of the instant motion, Defendant concedes that Plaintiff has satisfied the first three requirements of a *prima facie* case of discrimination—that is, he is a member of a protected class, he met the basic qualifications for his position, and he experienced an adverse employment action (that is, removal from his position).  (*See* Dkt. 47-1 at 16). However, Defendant argues that Plaintiff cannot establish that he was removed from his

employment under circumstances giving rise to an inference of discriminatory intent.  The

Court agrees, for the reasons that follow.

> As this Court has previously explained:
>
> Inference of discrimination is a flexible standard that can be satisfied differently in differing factual scenarios. . . .  An inference of discrimination can be drawn from circumstances such as the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's adverse employment action, or by showing that an employer treated an employee less favorably than a similarly situated employee outside his protected group.

*Brown v. Xerox Corp.*, 170 F. Supp. 3d 518, 532 (W.D.N.Y. 2016) (quotation and original

alterations omitted).  Here, Plaintiff has not identified any direct evidence of gender-based

discrimination, such as anti-male comments by the relevant decisionmakers.  Instead, he

contends that anti-male bias can be inferred from the totality of the circumstances.

As an initial matter, the Court notes that the mere fact that Plaintiff is male and his

supervisors were female does not, by itself, demonstrate an inference of discrimination.

*See, e.g.*, *Johnson v. City of N.Y.*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (citing *Yusuf

v. Vassar Coll.*, 35 F.3d 709, 71 (2d Cir. 1994)); *Holdmeyer v. Veneman*, 321 F. Supp. 2d

374, 382 (D. Conn. 2004), *aff'd sub nom. Holdmeyer v. Dep't of Agric.*, 146 F. App'x 535

(2d Cir. 2005).  While Plaintiff makes much of the fact that the management team at the

NCBO was majority female, that is not sufficient to maintain his discrimination claim on

a motion for summary judgment.

Separate from the mere fact that his supervisors were female, Plaintiff claims that

the following is evidence of gender-based discrimination: (1) "a high percentage of male

auditors in the NCBO Rochester office received a Notification of Denial of WIGI [within-grade step increases], including Mr. Darren Mitcham and Mr. Craig Fisher" while "[n]o female auditors in NCBO were shown to be denied a promotion"; (2) Essom put both male auditors on her work team (Plaintiff and "Mr. Stanley Jones") on a PIP; (3) two female auditors were transferred to Lathrop's work team, the team to which Plaintiff had requested a transfer; (4) Essom was highly critical of Plaintiff's work from the very beginning of her supervision; (5) Plaintiff's complaints about the way in which Essom treated him were not handled properly by the agency; (6) the incident in which blue slime was placed on his desk was not appropriately investigated; (7) Essom deliberately sabotaged Plaintiff's work during the PIP period; and (8) Essom's email to security in which she accused Plaintiff of borderline stalking was full of knowingly false information.  (Dkt. 59 at 5-21).  Plaintiff also argues at length that his work was not actually of a substandard quality.  These arguments, considered separately and collectively, are not sufficient to defeat Defendant's motion for summary judgment.

Plaintiff has neither submitted nor pointed to any admissible evidence to support his assertion that male auditors in the NCBO Rochester Office were treated more harshly than their female counterparts.  First, while it is true that Essom also put Stanley Jones ("Jones") on a PIP (*see* Dkt. 47-3 at ¶ 136), Jones successfully completed the PIP and continues to be employed by the NCBO Rochester Office (*id*. at ¶ 137).  Further, Jones testified that Essom provided him useful and constructive advice and went to "great lengths" to ensure that he leaned the necessary concepts.  (*Id*. at ¶ 138).  Indeed, Jones and several other male auditors testified that they did not perceive any differences in the way that Essom (or

Plaintiff's prior supervisor, Edkin) treated male and female auditors.   (*Id*. at ¶¶ 140-43).
Additionally, during her time as a supervisor, Essom also rated two female auditors less
than "Fully Successful."   (*Id*. at ¶ 145).   One of these female auditors would have been
placed on a PIP, but she retired before this could occur.   (*Id*.).

Second, Craig Fisher ("Fisher"), who was removed from his employment at the
NCBO Rochester Office in 2017, was terminated because his performance was
substandard, including failing to turn his assignments in on time during his PIP period.   (*Id*.
at ¶¶ 131).   Further, Fisher was under a completely different management chain than
Plaintiff at the time of his removal—his direct supervisor was Edkin, his Branch Manager
was LaLoggia, and LaLoggia was supervised by Regional Audit Manager Kalle Lepiksaar.
(*Id*. at ¶ 131).   It is undisputed that the auditor under Edkin's supervision with the highest
performance appraisal rating was a male.   (*Id*. at ¶ 132).   There is no evidence that Fisher
was removed from his employment due to his gender, nor that that the same decisionmakers
were involved in Fisher's case as were involved in Plaintiff's case.   *See Saenger v.
Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 514 (S.D.N.Y. 2010) ("[V]ague claims of
differential treatment alone do not suggest discrimination, unless those treated differently
are similarly situated in all material respects." (internal quotation marks omitted)).

Third, Darren Mitcham ("Mitcham") was also supervised by Edkin and not Essom,
and there is no evidence in the record that Mitcham was ever placed on a PIP or otherwise
treated more harshly than his female colleagues, apart from Plaintiff's unsupported
assertions.   A plaintiff's "unsubstantiated and self-serving testimony is insufficient,
without more, to defeat summary judgment."   *New World Sols., Inc. v. NameMedia Inc.*,

150 F. Supp. 3d 287, 326 (S.D.N.Y. 2015); *see also Ne. Research, LLC v. One Shipwrecked Vessel*, 729 F.3d 197, 213-14 (2d Cir. 2013) (conclusory, unsubstantiated allegations are insufficient to defeat a motion for summary judgment).

Fourth, Defendant has provided the Court with a compilation of the performance ratings in the NCBO Rochester Office for 2017 and 2018. (Dkt. 47-5 at 14-15). There is no pattern in this data of lower ratings for male employees versus female employees.

Fifth, Plaintiff has pointed to no admissible evidence establishing that the two female auditors who were allegedly transferred to Lathrop's team were similarly situated to him, nor any admissible evidence whatsoever regarding the circumstances in which such transfers occurred. These vague allegations are not evidence of gender-based discrimination.

The remainder of the evidence identified by Plaintiff has no relationship whatsoever to his gender. Plaintiff has certainly come forward with evidence from which a reasonable jury could conclude that Essom and Sholar had personal animus towards him, but "Title VII . . . does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted). Accordingly, "personal animus without evidence of . . . gender bias is insufficient to establish a claim under Title VII." *Espinosa v. Weill Cornell Med. Coll.*, No. 18 CIV. 11665 (AT), 2021 WL 1062592, at *9 (S.D.N.Y. Mar. 19, 2021); *see also Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important . . . to exclude from consideration personnel decisions that lack a linkage or correlation to

the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.").

Here, Plaintiff's own theory is that Essom had a "PERSONAL VENDETTA" against him because she incorrectly believed that he was responsible for the incidents in which hair was left on her desk.  (Dkt. 59-1 at 26-27 (emphasis in original)).  Even if that is true, it cannot support a Title VII claim.  *See, e.g., Singh v. Excel Sec. Corp.*, No. 14 CIV. 10111 (PAC), 2021 WL 1199469, at *6 (S.D.N.Y. Mar. 30, 2021) ("A reasonable jury could find that [a supervisor] did not like Plaintiff and did not want him working at the Building, but that does not constitute discrimination prohibited by Title VII, nor is Title VII an anti-personal vendetta statute."); *Johnson v. City Univ. of N.Y.*, 14-CV-587 (VEC), 2014 WL 4412475, at *1 (S.D.N.Y. Sept. 8, 2014) ("Bullying and harassment have no place in the workplace, but unless they are motivated by the victim's membership in a protected class, they do not provide the basis for an action under Title VII.").

Further, to the extent that Plaintiff is asserting that his work was assessed unfairly, his "subjective disagreement with [his employer's] assessment of [his] qualifications does not make [the] decision discriminatory."  *Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2018 WL 3315738, at *13 (S.D.N.Y. July 5, 2018); *see also Newsome v. IDB Cap. Corp.*, No. 13-CV-6576 (VEC), 2016 WL 1254393, at *22 (S.D.N.Y. Mar. 28, 2016) (" At their heart, Plaintiffs' claims reflect their disagreement with the Defendants' business judgments and assessments of the quality of their work or reflect the Plaintiffs' subjective feelings and perceptions that they were being discriminated against because of their race,

religion, ethnicity or gender.   Such claims are, however, insufficient to establish discrimination.").

In sum, on the record before the Court, a reasonable jury could find at most that Plaintiff was terminated because Essom and Sholar had personal animus towards him and were unfair in their assessments of his work.   That is insufficient as a matter of law to support the imposition of liability under Title VII, and so Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

## V.   **Plaintiff's Non-Discrimination-Based Challenge**

The Court turns next to Plaintiff's non-discrimination-based challenge to the MSPB's affirmance of his removal.   As noted above, the Court's review of this aspect of Plaintiff's claim is limited to the administrative record, and the Court cannot disturb the MSPB's determination unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence."   5 U.S.C. § 7703(c)).   "Substantial evidence means more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).

Here, the Court easily concludes that the MSPB's decision survives judicial review. The record is replete with documentation of Plaintiff's performance issues, which dated back to 2015 when he was supervised by other males.   Such documentation includes the 2018 PIP Notice and the Notice of Removal, both of which set forth detailed information

regarding Plaintiff's failure to meet the relevant performance standards and both of which were appropriately relied upon by the ALJ in making her determination.

Further, it was well within the ALJ's discretion to assess the credibility of Plaintiff and of Defendant's witnesses and to credit the testimony of the latter. *See Gale v. Napolitano*, No. 07-CV-5211 DLI MDG, 2011 WL 809499, at *4 (E.D.N.Y. Mar. 2, 2011) ("An MSPB ALJ's determinations regarding witness credibility are virtually unreviewable, since the determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." (quotation omitted)). Accordingly, the ALJ's rejection of Plaintiff's testimony that he was unable to improve his performance because of external factors including his reassignment to a new team and his unhappiness at working under Essom is not a basis for reversal by this Court.

Plaintiff further has not identified any evidence supporting the conclusion that any procedures required by law, rules, or regulations were not followed by the ALJ.  Plaintiff has focused at length on his disagreement with the ALJ's conclusions, but the question is not whether Plaintiff (or even the Court) agrees with the ALJ.  Applying the relevant standard of review, there is nothing before the Court to suggest that the MSPB's determination should be overturned.  Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's non-discrimination-based challenge to the MSPB's determination.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's pending motions to compel, for court intervention, and for sanctions.  (Dkt. 62; Dkt. 64; Dkt. 67).  The Court further

grants Defendant's motion for summary judgment (Dkt. 47) in its entirety.  The Clerk of

Court is instructed to enter judgment in favor of Defendant and to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 9, 2021
        Rochester, New York